IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THERESA CRUMRINE,            )
                             )
         Plaintiff,          )
                             )
    v.                       )
                             )  Civil Action No. 08-346
MICHAEL J. ASTRUE,           )
COMMISSIONER OF              )
SOCIAL SECURITY,             )
                             )
         Defendant.          )

MEMORANDUM JUDGMENT ORDER

AND NOW, this 18th day of August, 2009, upon due consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"), IT IS ORDERED that the Commissioner's motion for summary judgment (Document No. 14) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry

differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed her application for DIB on December 6, 2005, alleging disability beginning September 30, 2005, due to depression, migraine headaches, high cholesterol, diabetes, insomnia, high blood pressure and memory problems. Plaintiff's application was denied. At plaintiff's request, an ALJ held a hearing on August 2, 2007. On December 4, 2007, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on January 11, 2008, making the ALJ's decision the final decision of the Commissioner. The instant action followed.

Plaintiff was 46 years old at the time of the ALJ's decision and is classified as a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has a high school education. Plaintiff has past relevant work experience as a receptionist, but she has not engaged in substantial gainful activity at any time since her alleged onset date.

After reviewing plaintiff's medical records and considering

her testimony, the ALJ found that plaintiff suffers from the severe impairment of major depression, but he determined that impairment did not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1"). The ALJ then found that plaintiff retains the residual functional capacity to perform a range of sedentary work with a sit/stand option, and she is limited to performing postural movements occasionally. In addition, plaintiff is restricted to entry level, low stress, unskilled work that involves one to three step work processes. Finally, plaintiff is limited to working with things rather than people (collectively, the "RFC Finding").

Based upon testimony by a vocational expert at the hearing, the ALJ concluded that plaintiff's vocational factors and residual functional capacity enable her to make an adjustment to work that exists in significant numbers in the national economy, such as a security systems monitor or taper-assembly. Accordingly, the ALJ concluded that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment which can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind

of substantial gainful work which exists in the national economy ...." 42 U.S.C. §423(d)(2)(A).

To regularize the adjudicative process, the Commissioner has promulgated regulations that govern the evaluation of disability. 20 C.F.R. §§404.1501-.1598. The process is sequential and follows a "set order" of inquiries. 20 C.F.R. §404.1520(a)(4). The ALJ must determine: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment; (3) if so, whether her impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents her from performing her past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of her age, education, work experience and residual functional capacity. Id.; see also Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §404.1520(a)(4); see Santise v. Schweiker, 676 F.2d 925, 927 (3d Cir. 1982).

In this case, plaintiff challenges the ALJ's findings at step 5 of the sequential evaluation process. At step 5, the Commissioner must show that there are other jobs that exist in significant numbers in the national economy which the claimant can perform consistent with her age, education, past work experience and residual functional capacity. 20 C.F.R. §404.1520(g)(1). Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by

her impairments. 20 C.F.R. §404.1545(a)(1); Farqnoli, 247 F.3d at 40. In assessing a claimant's residual functional capacity, the ALJ considers the claimant's ability to meet the physical, mental and other sensory requirements of work. 20 C.F.R. §404.1545(a)(4).

Here, plaintiff argues that the ALJ erred at step 5 because: (1) he did not properly evaluate the medical records provided by plaintiff's psychiatrist; (2) he failed to adequately consider plaintiff's global assessment of functioning ("GAF") scores; and (3) his hypothetical question to the vocational expert was inadequate. The court finds that these arguments lack merit for the reasons explained below.

Plaintiff first argues that the ALJ did not properly evaluate the medical records of her psychiatrist, Dr. M.P. Patel. Dr. Patel's medical records include a written psychiatric evaluation of plaintiff, and his treatment notes from March 2006 until July 2007, which were recorded on eight form reports. (R. 125-26, 210, 293-98, 314). The form reports provided space for Dr. Patel to place a check mark next to plaintiff's complaints and symptoms, as well as space to record the results of her mental status examination. The mental status examination section of the forms required Dr. Patel to assess whether plaintiff exhibited a normal level of functioning in the following categories: thought process, appearance and behavior, mood and affect, speech, concentration, attention, memory, language, insight, judgment, perception, knowledge, association, orientation, recall of recent events, and

whether one had homicidal or suicidal plans. (R. 210, 293-98, 314). Dr. Patel was to check a box next to each category that he rated as normal.

Plaintiff contends the ALJ incorrectly determined that Dr. Patel's records show her mental status examination was normal. According to plaintiff, if Dr. Patel truly had assessed her level of functioning as normal, he would have checked the box next to the instruction section for the mental status exam, and not the box next to each of the individual categories. Plaintiff's argument misinterprets the form's instructions.

In accordance with the form's instructions, Dr. Patel checked the box next to each category that comprised the mental status exam to indicate that plaintiff maintained a normal level of functioning in that area. (R. 210, 293-98, 314). The form directed Dr. Patel to explain any category that he assessed as abnormal, and Dr. Patel did not provide any such written explanation. Moreover, Dr. Patel's written psychiatric evaluation of plaintiff supports his normal findings on the mental status examinations. Although Dr. Patel noted in his written evaluation that plaintiff feels depressed and anxious, he stated that her thought process was rational, logical and goal directed, her memory was fair, her knowledge and intellect were average, and she was able to take care of herself. (R. 125). Dr. Patel's written evaluation does not indicate that plaintiff is unable to maintain a normal level of functioning, (R. 125-26), and no other medical evidence in the record contradicts Dr. Patel's normal mental

status examination findings. For all of these reasons, the court finds that the ALJ properly evaluated Dr. Patel's medical records in concluding plaintiff is not disabled.

Plaintiff next argues that the ALJ failed to adequately consider her GAF scores of 50 in finding her not disabled. The GAF scale, designed by the American Psychiatric Association, is used by clinicians to report an individual's overall level of mental functioning. The GAF scale considers psychological, social and occupational functioning on a hypothetical continuum of mental health to illness. The highest possible score is 100 and the lowest is 1. A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Diagnostic and Statistical Manual of Mental Disorders (4th Ed. 2000).

Initially, the court notes that the Social Security Administration has declined to endorse the use of the GAF scale because its scores do not have a direct correlation to the disability requirements and standards of the Act. See Fortney v. Astrue, 2008 WL 4425808, *3 (W.D.Pa. Sept. 29, 2008), citing, "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 Fed.Reg. 50746 (August 21, 2000). Instead, the ALJ is to consider the clinical findings contained in the narrative reports of medical sources, and is to weigh that evidence under the standards set forth in the regulations for

evaluating medical opinion evidence, taking into account numerous factors including whether the opinion is supported by and consistent with other evidence. 20 C.F.R. §404.1527(d).

Here, despite plaintiff's argument that the ALJ failed to consider her GAF scores,[1] the court notes that the ALJ referred to her GAF score of 50 in his decision. (R. 17). More importantly, the ALJ analyzed and considered the medical evidence pertaining to plaintiff's mental impairment and concluded that she can perform other work that exists in the national economy. The court finds that the ALJ adequately considered all of the medical evidence, including the records of Dr. Patel as discussed above, and finds that the ALJ's decision is supported by substantial evidence.

Plaintiff's final argument is that the ALJ's hypothetical question to the vocational expert was inadequate because it did not incorporate all of her mental limitations. This argument essentially repeats plaintiff's dispute with the ALJ's analysis of the medical evidence and his RFC Finding, which, as stated above, the court finds is supported by substantial evidence.

An ALJ's hypothetical question to a vocational expert must

---

[1] In connection with plaintiff's GAF scores argument, she asserts that the United States District Court for the Eastern District of Pennsylvania held in Colon v. Barnhart, 424 F.Supp.2d 805 (E.D.Pa. 2006), that an ALJ's failure to discuss GAF scores of 50 or below is reversible error which requires remand for further administrative proceedings. Unlike the present case, in Colon, the ALJ mentioned the plaintiff's two highest GAF scores, but failed to discuss other lower scores or explain why he discounted them. Id. at 813-14. Contrary to plaintiff's assertion, Colon did not hold that the failure to discuss GAF scores below a certain level constitutes reversible error.

reflect all of the claimant's impairments and limitations supported by the medical evidence. Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). In this case, the ALJ's hypothetical accounted for plaintiff's mental limitations that were supported by the evidence of record and incorporated into the RFC Finding. Accordingly, the ALJ did not err in relying on the vocational expert's testimony to conclude that plaintiff can perform other work which exists in the national economy.

After carefully and methodically considering all of the medical evidence of record and plaintiff's testimony, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Accordingly, the decision of the Commissioner must be affirmed.

_____
Gustave Diamond
United States District Judge

cc: Karl E. Osterhout, Esq.
    1789 South Braddock Avenue
    Suite 570
    Pittsburgh, PA 15218

    Jessica Smolar
    Assistant U.S. Attorney
    700 Grant Street
    Suite 4000
    Pittsburgh, PA 15219